UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JEFFRIES,

        Petitioner,                      Case Number 18-11343
                                                        Honorable David M. Lawson
v.

DEWAYNE BURTON,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Michael Jeffries was convicted by a Wayne County, Michigan circuit judge sitting without a jury of assault with intent to commit murder and firearms offenses and was sentenced to a lengthy prison term. Following his unsuccessful appeals in state court, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging, as he did in the state appellate court, that his trial attorney was constitutionally ineffective. Because the state court of appeals reasonably applied applicable federal law, the petition will be denied.

I.

The facts of the case were summarized by the Michigan Court of Appeals on direct appeal:

This case arises from a shooting incident involving defendant and the victim, Robert Epps, which occurred near the intersection of Clark and West Vernier in Detroit on July 2, 2014, at approximately 2:00 a.m. The complainant testified that he received a phone call from defendant, requesting that he meet the defendant at that location so that he could return defendant's phone and pick up a "tester" of heroine. It was his testimony that after he arrived and saw the defendant was standing behind a tree, acting strange, and wearing a latex glove, he became concerned and attempted to leave when defendant began shooting at him. He claimed that defendant chased after him on foot shouting, "I'm gonna [sic] kill you," while firing several shots. Epps sustained three gunshot wounds. The day after the incident, Detroit Police Officer Darryl Chappell showed Epps a photographic array consisting of six photographs where Epps was able to identify defendant as the shooter, and was able to provide defendant's first and last name.

> To the contrary, defendant admitted knowing Epps but denied that he was ever present at the crime scene.

*People v. Jeffries*, No. 328120, 2016 WL 6667992, at *1 (Mich. Ct. App. Oct. 10, 2016).

The trial court found Jeffries guilty of assault with intent to commit murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. He was sentenced as a second-time habitual felony offender to concurrent prison terms of 20 to 40 years for assault and 3 to 7½ years for being a felon in possession, and a consecutive 2-year term for the felony firearm conviction.

Jeffries filed a direct appeal asserting two claims:

> I. Defendant was denied his right to effective assistance of counsel by his attorney's argument that the trial judge should find defendant guilty of a lesser degree of assault, never argued that there was a reasonable doubt as to defendant's guilt due to the highly questionable identification testimony, and suggested to the judge that defendant's testimony was false.
>
> II. Defendant is entitled to be resentenced where the trial judge erroneously denied his objection to the scoring of 50 points under offense variable six, which scoring raised the recommended range for the minimum sentence.

The Michigan Court of Appeals rejected the first claim on the merits, but it remanded the case for resentencing based on his second claim. Jeffries petitioner appealed this decision, but the Michigan Supreme Court denied leave to appeal. *People v. Jeffries*, 500 Mich. 984, 894 N.W.2d 46 (2017). On remand, the trial court resentenced Jeffries on his assault conviction to a prison term of 18 to 30 years.

In his habeas petition, Jeffries raises the first claim that he presented to the state appellate courts. Pet. at 4, ECF No. 1, PageID.4. The warden contends that the claim was properly rejected by the state courts consistent with applicable federal law.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court

rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Jeffries contends that he was denied the effective assistance of counsel during closing argument in three ways: his lawyer conceded guilt to a lesser offense, he failed adequately to attack the reliability of the victim's identification testimony, and he suggested that Jeffries's testimony was untruthful.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates

both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White v. Woodall*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) ). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

A.

In his closing argument, Jeffries's attorney asked the trial court "to consider the lesser included offense of assault with intent to do great bodily harm . . . ." Trial Tr. at 149, ECF No. 7-9, PageID.355. He did not completely abandon the possibility of an acquittal, but he advocated that the court should "find [Jeffries] guilty of [assault with intent to do great bodily harm], or if you believe his testimony, not guilty of everything." *Ibid.* Jeffries argues that this argument violated professional norms and denied him the effective assistance of counsel.

The Michigan Court of Appeals disagreed, writing:

> We believe this argument was a reasonable strategy considering the trial testimony. The record reveals that, at trial, substantial evidence was presented of defendant's involvement in the crimes charged. Epps and defendant testified that they had known each other for approximately one to two years and that their relationship revolved around illegal drugs. Epps testified that he recognized defendant's voice as he walked toward the park and that he stood face-to-face with defendant before

> defendant began chasing him at gunpoint. Epps identified defendant as the shooter when responding officers arrived at the scene, and again the next day in a photographic array and provided Detective Chappell defendant's first and last name. Epps's medical records were admitted into evidence, which confirmed he sustained three gunshot wounds. Jail recordings of phone calls made by defendant to his sister, Ashley Hosler, were also admitted into evidence and confirmed that defendant asked her to testify that he was at her house on the night of the incident. Hosler explained that this was a lie because he was not at her house that night.
>
> Given the strong evidence against defendant, defense counsel's strategy of requesting leniency in the form of a lesser included charge was reasonable trial strategy. This Court will not second-guess counsel's trial tactic of admitting guilt of a lesser offense. The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel. Thus, defendant has failed to demonstrate that defense counsel's performance was deficient.

*Jeffries*, 2016 WL 6667992, at *2-3 (quotation marks and citations omitted).

That holding reasonably applied the *Strickland* standard. The record evidence presented against Jeffries at his bench trial was quite strong. The victim, Epps, testified that he had known Jeffries for more than two years, and on the date of the incident he had arranged to meet him in front of a YMCA in Detroit. Trial Tr. at 28-30, ECF No. 7-9, Page ID.234-36. The stated purpose of the meeting was to exchange a cell phone and deliver a sample of heroin. *Id.* at 29, PageID.235. When he arrived at the scene, the victim did not initially see Jeffries, but he heard him call his name, and then the two men stood face to face. *Id.* at 32, 48, PageID.238, 254. Jeffries then produced a handgun and started shooting at the victim, stating "I'm gonna kill you." *Id.* at 35-38, PageID.241-44.

The victim, who was struck several times by bullets, managed to escape to a gas station. He told a responding officer that "Mike" shot him. *Id.* at 102-106, PageID.308-12. The next day, the victim picked Jeffries out of a photo array during an identification procedure at the hospital. *Id.* at 43, PageID.249. The victim was a DEA informant, and he thought he was shot because of his cooperation with law enforcement. *Id.* at 117-122, PageID.323-28.

After his arrest, Jeffries called his sister from jail, and he asked her to lie and say that he was at her house at the time of the incident. *Id.* at 17-18, PageID.223-24. She testified at trial that she would not lie for him. *Id.* at 18, PageID.224.

Defense counsel no doubt apprehended that the evidence identifying Jeffries as the perpetrator was formidable, and the facts establishing an assault of some degree were compelling. It was reasonable, therefore, for the state appellate court to conclude that defense counsel's decision to argue for a lesser offense amounted to a reasonable strategy. Supreme Court precedent recognizes that defense counsel may concede a defendant's guilt of lesser offenses in an effort to avoid conviction on more serious charges without running afoul of the Sixth Amendment. *See*, *e.g.*, *Poindexter v. Mitchell*, 454 F.3d 564, 582 (6th Cir. 2006) (citing *Florida v. Nixon*, 543 U.S. 175, 189 (2004), and holding that counsel was not ineffective by conceding that the petitioner was guilty of murder but arguing that he was not guilty of aggravated murder). Concession of guilt to a lesser included offense had been widely recognized as a legitimate trial strategy. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004) (citing *Haynes v. Cain*, 298 F.3d 375, 381-82 (5th Cir. 2002); *Lingar v. Bowersox*, 176 F.3d 453, 459 (8th Cir. 1999); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991)); *see also Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir. 1990) ("[T]here is a distinction which can and must be drawn between . . . a tactical retreat and . . . a complete surrender."). Counsel reasonably recognized the strength of the evidence placing Jeffries at the scene of the crime. Under *Strickland*, the Court will second-guess neither his tactical decision to argue for a lesser conviction nor the state court's assessment of that decision. This claim is without merit.

B.

Jeffries next asserts that his trial counsel was ineffective by failing to argue in closing that the victim's identification was unreliable, thereby creating reasonable doubt about Jeffries's guilt. The state appellate court once again denied the claim on the merits:

> Defense counsel's decision regarding what evidence to highlight during closing argument is presumed to be a matter of trial strategy, which we will not second-guess. Although defendant contends that defense counsel was ineffective for failing to remark on the unreliability of Epps's identification of defendant as the shooter, defendant fails to establish a factual predicate for his claim. A review of the record reveals that defense counsel extensively cross-examined Epps on the unreliability of his identification of defendant as the shooter. Additionally, defense counsel cross-examined responding officer, Detroit Police Officer Maurice Dickson, eliciting discrepancies on whether Epps had originally identified two suspects who were African American.
>
> Although there was conflicting evidence regarding Epps's original description of the suspect, any conflicts in evidence are resolved in favor of the prosecution. Detective Chappell's testimony directly contradicted that of Officer Dickson. Officer Dickson testified that when he arrived on scene at the gas station and asked Epps to describe what happened, Epps stated that a "Mike something" shot him, but also mentioned that there were two African American suspects. However, Detective Chappell testified that Epps positively identified defendant as the shooter from a photographic array the next day, and was able to provide defendant's first and last name.
>
> Thus, the record reveals that defense counsel effectively elicited any discrepancies regarding Epps's identification during cross-examination. It is possible that defense counsel concluded that remarking on these discrepancies during his closing argument was cumulative, especially considering the trial judge sat as the fact-finder and is presumed to know the burden of proof in a criminal case. Regardless, defense counsel's decision whether to call attention to the identification testimony was a matter of trial strategy, and defendant has failed to overcome the presumption that defense counsel's decision was sound trial strategy.

*Jeffries*, 2016 WL 6667992, at *3-4 (citations omitted).

The record supports the state appellate court's decision, which reasonable applied the *Strickland* standard. Defense counsel elicited testimony from the police officers on cross-examination that there was a discrepancy in the victim's description of the perpetrator. Trial Tr.

-8-

at 106-07, ECF No. 7-9, PageID.312-13. But apart from that line of inquiry, there was not a strong defense to be mounted as to the victim's identification of Jeffries as the perpetrator. In its findings of fact following the bench trial, the trial court acknowledged that Jeffries testified that he was somewhere else at the time of the incident, but the court found "his testimony and the credibility of his testimony about where he was at that time, is severely called into question when one considered the phone conversation with his sister and his sister's own testimony that he was not with her that evening. And that she felt he was asking her to lie and she wasn't going to get involved in that." *Id.* at 161, PageID.367. The trial court also noted that Jeffries and the victim knew each other, that the victim stated immediately after the incident that "Mike" shot him, and that the victim picked Jeffries photo from an array the next day. *Id.* at 159-60, PageID.365-66.

In light of the evidence presented at trial and the findings made by the trial court, defense counsel did not perform deficiently by not spending time during closing argument challenging the victim's identification. Moreover, the trial court's decision to not believe Jeffries's testimony that he was not present at the scene discounts any prejudice that might have resulted from his counsel's decision not to press a misidentification defense. This claim is without merit.

C.

Last, Jeffries asserts that his attorney performed deficiently by conceding during closing argument that Jeffries's trial testimony was untruthful, when he told the court, "Mr. Jeffries may have a mistaken idea of what is the truth." Trial Tr. at 148-49, ECF No. 7-9, PageID.354-55. The Michigan Court of Appeals rejected this claim on the merits as follows:

> A review of the record reveals that defense counsel was faced with substantial evidence that directly contradicted defendant's testimony. For example, defendant testified that he had nothing to do with the shooting and that he did not ask Hosler to lie for him on the stand. However, during Hosler's testimony, she stated that defendant had asked her to testify on his behalf and state that he was at her house on the night of the shooting. Hosler explained that, while defendant did not

> explicitly ask her to lie, he was not at her house on the date of incident, and she felt uncomfortable lying for him. Evidence of the jail tape, which consisted of their telephone conversation, supported Hosler's testimony that defendant had asked her to state that he was at her house on the date of the incident. There were several other such instances.
>
> Faced with the contradictions in testimony and the strong evidence against defendant, defense counsel apparently chose to acknowledge the contradictions and explain some of them as mistakes of memory rather than intentional untruths. The defendant has not overcome the presumption that defense counsel employed sound trial strategy, and this Court will not second-guess that strategy. Under the circumstances described above, defense counsel was not deficient.

*Jeffries*, 2016 WL 6667992, at *4 (citation omitted).

For many of the reasons already stated, this decision did not unreasonably apply the *Strickland* standard. Again, the evidence indicating that Jeffries was the perpetrator was quite strong: he was someone the victim had known for more than a year, and his sister testified that he asked her to help him fabricate an alibi. Under these circumstances, it was not unreasonable for defense counsel to make the much more palatable argument that despite Jeffries's testimony that he was not present, he should only be convicted of a lesser offense.

III.

The record does not support the petitioner's argument that he was denied the effective assistance of counsel in violation of the Sixth Amendment. None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: July 19, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on July 19, 2019.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI

---